UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY SALERNO,

    Plaintiff,

vs.                                                 Case No. 8:04-cv-1056-T-24 MAP

AUTO OWNERS INSURANCE
COMPANY, ET AL.

    Defendants.
_____/

**O R D E R**

This cause comes before the Court on Defendants Curtright Truitt and Curtright C. Truitt, P.A.'s Motion for Summary Judgment. (Doc. No. 69). Plaintiff opposes this motion. (Doc. No. 74). The Court held a hearing on this motion on July 24, 2006.

**I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. See id. When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  Background

Plaintiff Jeffrey Salerno alleges the following in his Second Amended Complaint (Doc. No. 29): On January 5, 2000, Defendant Auto Owners Insurance Company ("Auto Owners") provided liability insurance coverage to Plaintiff regarding the use of the vehicle that Plaintiff was driving on that day. On that day, Plaintiff attempted to make a left turn in front of Dean James Alessandrini, which caused Mr. Alessandrini to lose control of his motorcycle and be thrown onto the road and into the path of another vehicle. As a result, Mr. Alessandrini died, and his survivors made a claim for damages against Plaintiff.

On or around March 20, 2000, Auto Owners hired Defendants Curtright Truitt (a Florida attorney) and Curtright C. Truitt, P.A. ("Truitt P.A.") to settle the Alessandrini claim against Plaintiff. Specifically, Auto Owners directed Mr. Truitt and Truitt, P.A. to pay the bodily injury liability limits to the Alessandrini survivors and obtain a release on behalf of Plaintiff.

On or around November 15, 2001, the Alessandrini survivors offered to settle their claim against Plaintiff for the available policy limits, but Mr. Truitt and Truitt, P.A. failed to accept the offer of settlement, and a lawsuit for damages was filed by the Estate of Dean James Allessandrini ("the Estate") against Plaintiff. As a result of Mr. Truitt and Truitt, P.A.'s alleged negligence in handling the claim, failure to settle the claim within the policy limits, and failure to properly advise Plaintiff, the claim against Plaintiff was not settled and a judgment was entered against Plaintiff in favor of the Estate in the amount of $2.4 million on October 17, 2003.

On May 10, 2004, Plaintiff filed suit against Auto Owners, asserting a bad faith claim. In August of 2005, Plaintiff amended his complaint to add attorney malpractice claims against Mr. Truitt and Truitt, P.A. Thereafter, Mr. Truitt and Truitt, P.A. (collectively referred to as "Defendants"[1]) filed the instant motion for summary judgment.

### III. Motion for Summary Judgment

Defendants move for summary judgment, arguing that Plaintiff assigned his attorney malpractice claims to the Personal Representative of the Estate, and therefore, the Personal Representative of the Estate is the real party in control of the malpractice claim. Furthermore, Defendants argue that since an assignment of a malpractice claim is void under the circumstances present in this case, the Court cannot allow the continued prosecution of the

---

[1] References to Defendants throughout the remainder of this Order refer to Mr. Truitt and Truitt, P.A. only.

attorney malpractice claim that is controlled by a plaintiff other than one to which Defendants owed a duty due to an attorney-client relationship.

Defendants base their contention that Plaintiff assigned his attorney malpractice claim to the Personal Representative on a Stipulation to Delay Execution[2] ("the Stipulation") entered into by Plaintiff and the Personal Representative after the Estate obtained the $2.4 million judgment against Plaintiff.  The Stipulation provides that Plaintiff and the Personal Representative agreed that Auto Owners failed to settle the Estate's claim against Plaintiff when it could and should have done so, and as a result of the bad faith actions of Auto Owners, Plaintiff had a judgment entered against him for an amount far in excess of the available policy limits.  Furthermore, the Stipulation provides:

> 5.    The parties recognize that SALERNO has a viable bad faith cause of action against Auto Owners.  It is the intention of SALERNO to prosecute the aforesaid bad faith claims to the fullest extent of the law so as to protect himself from further damage and recover any additional losses caused by Auto Owners' bad faith actions.
>
> 6.    The parties agree that it is in the best interest of all parties to this Stipulation that SALERNO prosecutes his bad faith claims against Auto Owners, and any other responsible party or agent for bad faith and/or negligence in the handling of the claims made against SALERNO by the PERSONAL REPRESENTATIVE.
>
> \*     \*     \*
>
> 8.    SALERNO agrees to file and diligently prosecute all available claims against Auto Owners and any other responsible party or agent for bad faith and/or negligence in the handling of the claim made against him by the PERSONAL REPRESENTATIVE.  SALERNO agrees to use attorneys as are selected and approved by the PERSONAL REPRESENTATIVE, [i]n the prosecution of these cases, so long as . . . there is no direct cost or financial obligation to SALERNO.

---

[2]Doc. No. 69, Ex. A.

4

9. SALERNO will permit his attorneys to report directly to the PERSONAL REPRESENTATIVE'S attorneys, on the progress and outlook of the bad faith claims as frequently as requested by the PERSONAL REPRESENTATIVE . . .. The PERSONAL REPRESENTATIVE will have the right to approve, disapprove or require acceptance of any proposed settlement of the bad faith claims between SALERNO and any oth

10. SALERNO agrees to cooperate [i]n the prosecution of these claims . . ..

11. From the proceeds, if any, of the bad faith claims brought by SALERNO, the attorney's fees and costs of SALERNO'S bad faith attorneys will be paid. The net proceeds, after the payment of those sums, and up to the amount necessary to fully satisfy the PERSONAL REPRESENTATIVE'S judgment, will be paid to the PERSONAL REPRESENTATIVE, and SALERNO hereby assigns to the PERSONAL REPRESENTATIVE those net proceeds, and agrees to execute such other instruments as may be required to effect this assignment.

12. So long as SALERNO honors the obligations expressed in this stipulation, the PERSONAL REPRESENTATIVE agrees not to pursue any collection efforts directly against SALERNO for a period of four (4) years or until the bad faith claims are concluded, whichever is longer. . . .

13. If the bad faith and negligence lawsuits contemplated herein are successful in achieving proceeds through a trial or through a settlement if approved by the PERSONAL REPRESENTATIVE, then, in exchange for the net proceeds of the claims assigned to the PERSONAL REPRESENTATIVE, the PERSONAL REPRESENTATIVE will execute and deliver a satisfaction of the judgment she holds against SALERNO, and will deliver a complete release of SALERNO.

Attorney malpractice claims are generally not assignable. See Cowan Liebowitz & Latman, P.C. v. Kaplan, 902 So. 2d 755, 757 (Fla. 2005). "Florida law views legal malpractice as a personal tort which cannot be assigned because of the personal nature of legal services which involve highly confidential relationships." Id. at 758 (internal quotations and external citations omitted). Therefore, courts "prohibit the assignment of legal malpractice claims, mostly based on public policy concerns." Id. at 759 (citations omitted). "Courts are mainly concerned about creating a market for legal malpractice claims." Id. at 760. As one court has stated:

5

> It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty. . . . The commercial aspect of assignability of . . . legal malpractice [actions] is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing [sic] such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

Id. (quoting Goodley v. Wank & Wank, Inc., 133 Cal. Rptr. 83, 87 (Cal. Ct. App. 1976)).

Public policy concerns are readily apparent when the assignment is made to a former adversary.  See Security National Servicing Corp. v. Law Office of David J. Stern, P.A., 916 So. 2d 934, 938 (Fla. 4th DCA 2005)(citation omitted).  Furthermore, when "a largely judgment-proof defendant assigns the right to sue his attorney to the successful plaintiff in exchange for a release, such a situation is generally recognized as the worst excess to be avoided."  Id. (citation omitted).

The case of Weiss v. Leatherberry, 863 So. 2d 368 (Fla.1st DCA 2003), is instructive.  In Leatherberry, a client, Leatherberry, filed suit against his lawyer for legal malpractice.  See id. at 369.  The suit was initiated according to the terms of an agreement between Leatherberry and the injured party, Green, from a previous car accident case.  See id.

After Green obtained a verdict against Leatherberry in the previous case, Green and Leatherberry entered into an agreement wherein Leatherberry was required to immediately pursue a legal malpractice claim against his attorney and assign all of the benefits from the lawsuit to Green. See id. at 370. In return, Green agreed that she would not execute her judgment against Leatherberry's assets as long as Leatherberry diligently pursued the malpractice claim and cooperated with Green's attorney in the prosecution of the claim. See id. Leatherberry moved for summary judgment on the legal malpractice claim, and the court entered judgment in Leatherberry's favor. See id. at 371.

The appellate court reversed, stating the following:

> The agreement in the present case does not purport to be an assignment of the cause of action, but it has the same effect. Green traded her right to execute her judgment against Leatherberry for the right to obtain the proceeds of Leatherberry's malpractice suit against [his attorney]. Leatherberry was the plaintiff in the [malpractice] suit, at least nominally, but he had no control over the litigation. The agreement required him to pursue the case and cooperate with a lawyer selected by Green as a condition of avoiding the execution of Green's judgment against him. The lawyer in question is one of the lawyers who represented Green in the previous negligence suit and helped to obtain Green's judgment against Leatherberry.
>
> \*   \*   \*
>
> Mr. Leatherberry has no control over the malpractice claim. He could not dismiss the claim without violating his agreement with Green. In fact, he would be unable to dismiss the case even if he concluded, at some point, that the claim was unmeritorious. Furthermore, he could not unilaterally decide to accept or reject an offer in the case, because the agreement requires him to cooperate with Green's lawyer. The potential conflict is apparent. Green's lawyer obviously has a right to recover a percentage of the uncollected judgment in the automobile negligence case, and he has authority under the agreement to overrule any decision Leatherberry might wish to make regarding the prosecution of the malpractice case.

Id. at 372.

As a result, the appellate court found that the agreement between Green and Leatherberry was equivalent to an assignment of a malpractice claim, which is generally not permissible in Florida.  See id.  Therefore, the court found that the purported assignment was void and the malpractice action could not be maintained in its current form.  See id. at 369.

The appellate court analyzed the proper remedy for the situation and stated the following:

> Our holding that the agreement between Green and Leatherberry is an unlawful assignment of a malpractice claim compels a conclusion that the cause of action asserted under the agreement cannot be maintained.  It follows that the judgment for Leatherberry must be reversed, but this does not necessarily mean that [the attorney] is entitled to prevail on the merits of the [malpractice] case.
>
> The invalidity of the agreement has no effect on the underlying cause of action for legal malpractice, assuming the claim is asserted by proper person.  Leatherberry may decide that he will assert a claim of malpractice against [the attorney], even though he is no longer bound by the agreement.  On the other hand, he may have no interest in the claim now that he is no longer protected by the agreement.
>
> The best available solution is to remand the case to the trial court for a hearing to determine how Leatherberry intends to proceed.  If he does not wish to pursue the action, he can simply file a voluntary dismissal.  If he does intend to purse the action, the litigation must start over from the beginning and the parties will not have the benefit of any order entered in the proceeding initiated under the agreement.  We could not hold that the agreement to assign the cause of action is invalid and at the same time affirm decisions made in litigation pursued under the agreement.

Id. at 373.

Based on the above, this Court must determine whether the Stipulation in the instant case is equivalent to an assignment of a malpractice claim.  After reviewing the Stipulation, Plaintiff's testimony at the hearing, and the relevant case law, the Court finds that the Stipulation contemplates and contains within its scope Plaintiff's malpractice claims.  Specifically, paragraphs six and eight of the Stipulation provides that Plaintiff would prosecute his claims against any responsible party for their negligence in the handling of the Estate's claim against

8

him; thus, these paragraphs indicate that the malpractice claims are included within the scope of the Stipulation. Furthermore, paragraph eight provides that Plaintiff would use attorneys selected by the Estate to prosecute the claims, which include the malpractice claims.[3] Finally, paragraph thirteen provides that the Estate must approve any settlement of the negligence claims (i.e., the malpractice claims) in order for the Estate to be required to execute and deliver a satisfaction of the state court judgment. Additionally, the Court notes that Plaintiff testified at the hearing that if he succeeds on his malpractice claims, he did not believe that he would receive any money. Based on the above, the Court finds that the Stipulation in this case is the equivalent of an assignment of a malpractice claim.[4]

Since the Court has found that the Stipulation is the equivalent of an assignment of a malpractice claim, the Court must determine the proper remedy. According to Leatherberry, this Court must determine whether Plaintiff wishes to prosecute the malpractice claims against Defendants now that the Court has determined that he is not bound by the Stipulation to do so. Plaintiff has indicated that he does wish to prosecute the malpractice claims. (Doc. No. 73: Plaintiff's affidavit, ¶ 5).

However, this Court finds that in order for Plaintiff to prosecute the malpractice claims at this point, Plaintiff must have complete control and financial responsibility over the litigation of

---

[3] Plaintiff testified at the hearing that Dale Swope, the Estate's attorney, selected Plaintiff's attorney, Mr. Ward, to bring the original lawsuit against Auto Owners. Plaintiff further stated that he was not financially obligated to his attorneys; instead, they are being paid under a contingency fee agreement.

[4] To the extent that Plaintiff argues that he has control over the malpractice claims and they are not within the scope of the Stipulation, the Court rejects this argument. The Court notes that Plaintiff filed an affidavit in which he states that: (1) he did not intend to assign his legal malpractice claims; and (2) he brought the malpractice claims on his own, freely and independently of the Stipulation. (Doc. No. 73: Plaintiff's affidavit). However, the terms of the Stipulation clearly indicate that the malpractice claims are within the scope of the Stipulation.

these claims. This means that Plaintiff does not have to have his current attorneys represent him in the prosecution of his malpractice claims, and he is free to obtain new counsel without any input from the Estate, the Estate's attorney, and/or Plaintiff's current attorneys. Additionally, Plaintiff will not be required to update the Estate on the progress of the malpractice claims, nor does the Estate have the authority to approve or disapprove of a settlement or approve of dismissal of the malpractice claims. Instead, Plaintiff has complete control over the continued prosecution of the malpractice claims and whether or not to settle and/or dismiss them. Furthermore, Plaintiff will be financially responsible for the litigation of his malpractice claims, and any recovery on the malpractice claims will belong to him (unless he enters into a contingency fee arrangement with his attorney). Thus, if Plaintiff is successful on his malpractice claims, such will in no way affect or trigger any obligations under the Stipulation.

      The Court notes that at the hearing, Defendants argued that the only proper remedy was to grant summary judgment on the malpractice claims (because they were brought pursuant to the Stipulation and were therefore void), and if Plaintiff wanted to pursue his malpractice claims, he would have to file a new suit. Furthermore, Defendants point out that Plaintiff would likely be unsuccessful in filing a new suit, since the statute of limitations for his malpractice claims against Defendants has already expired. Regardless, Defendants argue that Plaintiff cannot pursue his malpractice claims in the present lawsuit.

      The Court rejects Defendants' argument that Plaintiff would have to file a new suit in order to pursue his malpractice claims, which is barred by the statute of limitations. The Court finds that <u>Leatherberry</u> is instructive. In <u>Leatherberry</u>, the underlying judgment that led to the agreement at issue was entered into prior to January 7, 2000. <u>See</u> <u>id.</u> at 370. On January 21,

2004, the appellate court denied rehearing on the appeal, in which it found that the agreement was the equivalent of an assignment of a malpractice claim. Rather than directing Leatherberry to file a new suit, which, it appears, would have been barred by the statute of limitations, the appellate court remanded the case to the trial court to start the case over from the beginning if Leatherberry wanted to pursue the malpractice claim on his own.[5] See id. at 373. Likewise, in the instant case, the Court will not require Plaintiff to file a new suit in order to pursue the malpractice claims. Instead, Plaintiff simply must start the prosecution of his malpractice claims over again and have complete control and financial responsibility over the litigation of these claims.

**IV. Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendants Curtright Truitt and Curtright C. Truitt, P.A.'s Motion for Summary Judgment (Doc. No. 69) is **DENIED**.

(2) No later than August 3, 2006, Plaintiff is directed to either (a) file a notice stating who is representing him in the prosecution of his malpractice claims against Defendants Curtright Truitt and Curtright C. Truitt, P.A., or (b) file a notice of voluntary dismissal of his malpractice claims against Defendants Curtright Truitt and Curtright C. Truitt, P.A.

(3) If Plaintiff wishes to pursue the malpractice claims, Plaintiff must have complete control and financial responsibility over the litigation of the malpractice claims,

---

[5]This Court notes that this procedure set forth in Leatherberry has been followed by Florida's Fourth District Court of Appeal. See Greene, P.A. v. Leasing Associates, Inc., 2006 WL 1235908 (Fla. 4th DCA May 10, 2006).

and he is no longer subject to the requirements of the Stipulation with respect to the malpractice claims.

(4) The Court moves the pretrial conference in this case that was scheduled for August 3, 2006 to **Friday, August 18, 2006 at 8:30 a.m.** in Courtroom 14A. The parties are directed to file their joint pretrial statement by August 15, 2006.

**DONE AND ORDERED** at Tampa, Florida, this 25th day of July, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record